# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| AMERICAN QUALITY SCHOOLS CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) NO. 2:16-CV-479 ) ) |
| THE LEONA GROUP, *et al.*, | ) ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on: (1) Motion to Dismiss Counts II and III of Complaint Pursuant to Rule 12(b)(6), filed by The Leona Group on December 13, 2016 (DE #8); (2) Defendant the School Board of the East Chicago Urban Enterprise Academy's Motion to Dismiss Plaintiff's Complaint, filed on December 13, 2016 (DE #9); and (3) Defendant Ben Clement's Motion to Dismiss Counts I, III, and IV of Plaintiff's Complaint Pursuant to Rule 12(b)(6), filed on December 16, 2016 (DE #12). For the reasons set forth below, the motions are **GRANTED.** The Complaint is **DISMISSED WITHOUT PREJUDICE**.

BACKGROUND

American Quality Schools ("AQS") brought suit against The Leona Group ("Leona"), the School Board of the East Chicago Urban

Enterprise Academy ("Board"), and Ben Clement ("Clement") in Lake County, Indiana on March 30, 2016. AQS is an Educational Management Organization ("EMO"). AQS entered into a contract to operate the East Chicago Urban Enterprise Academy ("Academy"), a charter school, from July 1, 2014 to June 30, 2016. The Academy received high academic ratings under AQS's management. Despite those ratings, the Board did not renew AQS's contract to manage the Academy. Instead, the Board contracted with Leona to manage the Academy. The complaint alleges that this was the result of Clement and Leona interfering with AQS's business relationship with the Board (Counts I and II). The complaint further alleges that Clement conspired with both Leona (Count III) and the Board (Count IV) to interfere with AQS's business relationship with the Board. Lastly, the complaint alleges that the Board breached its fiduciary duty to AQS (Count V).

Each Defendant has filed a motion to dismiss the complaint. The motions are fully briefed and ripe for adjudication.

DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Allegations other than fraud and mistake are governed by the pleading standard outlined in Federal Rule of Civil Procedure 8(a), which requires

2

a "short and plain statement" that the pleader is entitled to relief. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).

In order to survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pleaded facts must be accepted as true, and all reasonable inferences from those facts must be resolved in the plaintiff's favor. *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008). However, pleadings consisting of no more than mere conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678-79. This includes legal conclusions couched as factual allegations, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Intentional Interference with a Business Relationship

The complaint alleges that the Board's contract with AQS was not renewed because Clement and Leona interfered with AQS's business relationship with the Board (Counts I and II). According to AQS, Clement was hired by the Board as an educational consultant in late 2015. Previously, Clement served on the board of a different charter school, the Thea Bowman

3

Leadership Academy ("TBLA"). In that role, Clement was part of a decision to sever TBLA's relationship with AQS in favor of its competitor, Leona. Defendants argue that this claim must fail because there was no business relationship to interfere with and, even if there were, the complaint does not allege the illegal conduct required for the claim to succeed.

The elements of intentional interference with a business relationship under Indiana law include: (1) the existence of a valid business relationship; (2) The defendant's knowledge of the existence of the relationship; (3) intentional interference with the relationship; (4) the absence of justification; and (5) damages resulting from the interference. *Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 876 (Ind. Ct. App. 1998). Additionally, a plaintiff need not show the existence of a valid contract where the defendant illegally achieved its end. *Id. See also Johnson v. Hickman*, 507 N.E.2d 1014, 1019 (Ind. Ct. App. 1987).

The contract entered into by the Board and AQS expired on June 30, 2016. It did not contain a renewal provision. (DE #8-1 at 11-35). AQS has not alleged that the Board breached the contract. Leona and Clement urge this Court to find that the business relationship between AQS and the Board expired with the contract, and there was therefore no business relationship that they could have interfered with. *See Computers Unlimited, Inc.*

*v. Midwest Data Systems, Inc.*, 657 N.E.2d 165, 168 (Ind. Ct. App. 1995)(finding, under the facts of that case, that no business relationship existed after termination of the contract).

The complaint does not allege facts from which it can be inferred that a business relationship existed between AQS and the Board outside of the relationship established by the contract. Nonetheless, in its response brief, AQS suggests that the business relationship between the Board and AQS was more extensive than the single contract at issue here. AQS alleges the relationship began eleven years prior to this contract. (DE #19 at 8). That fact, however, is not in the complaint, and will not be considered by this Court.[1]

Even if, as AQS alleges, its business relationship with the Board extends beyond the contract, it must allege illegal conduct. AQS's complaint alleges that Clement was not impartial and favored a transfer to Leona. He further alleges that the Board, as part of the proposal process, sought proprietary information that was not relevant to the proposal process but would have been relevant to a management transition. (DE #8-2 page 6). This amounts to an allegation that AQS behaved

---

[1] "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). *See Tradewinds Glob. Logistics, LLC v. Garrett's Transp., LLC,* No. 1:15-CV-00608-RLY-DKL, 2015 WL 8362401, at *2 (S.D. Ind. Dec. 8, 2015). This Court, in its discretion, is excluding all materials outside of the pleadings.

5

unethically, not illegally. *See Biggs v. Marsh*, 446 N.E.2d 977, 983-84 (Ind. Ct. App. 1983).

In response to the instant motions, AQS claims that a violation of the Indiana Unfair Trade Secrets Act ("IUTSA"), I.C. § 24-2-3-2 et seq., provides the illegal act. The complaint, however, does not allege a violation of this provision.

AQS, without any citation to legal authority, also suggests that there is an implied duty to act in good faith. (DE #19 at 9). In certain contexts, for example, employment contracts and insurance contracts, there is such a duty. *See Perron on behalf of Jackson v. J.P. Morgan Chase Bank N.A.,* 845 F.3d 852, 856 (7th Cir. 2017). This obligation arises when one party is a fiduciary or superior, or when a special relationship exists. *Id.* No facts presented in the complaint establish that such a relationship exists here, for reasons explained more fully below. Because the complaint does not contain facts supporting AQS's claim that its business relationship with the Board extended beyond the two-year contract, and does not allege facts supporting AQS's assertion that Leona and Clements engaged in illegal conduct, Counts I and II of the complaint must be dismissed.

Conspiracy

The complaint alleges that Clement conspired with both Leona (Count III) and the Board (Count IV) to interfere with AQS's business relationship with the Board. Defendants argue that, because the intentional interference with a business relationship claims fail, the conspiracy claims also fail.

In Indiana, there is no independent cause of action for conspiracy. It is a derivative claim. *See Anton Realty, LLC v. Fifth Third Bank*, 2015, No. 1:15-CV-00199-RLY-TAB, 2015 WL 8675188 (S.D. Ind. Dec. 11, 2015)(dismissing a civil conspiracy claim where the underlying claim of tortious interference with a contractual relationship failed). *See also Miller v. Central Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 962-63 (Ind. Ct. App. 2014).

AQS does not address the derivative nature of civil conspiracy. Instead, AQS argues that the giving of trade secrets without consent is illegal and provides the basis for the conspiracy claim. As this Court has pointed out already, the complaint does not allege a trade secrets claim. Any viable conspiracy claim is dependent upon the intentional interference with a business relationship claim. Since those claims fail, so do the conspiracy claims. Counts III and IV must be dismissed.

7

Breach of Fiduciary Duty

Count V of the complaint alleges that the Board breached its fiduciary duty to AQS. The Board asserts that it did not owe AQS a fiduciary duty.

The Academy is an Indiana not-for-profit corporation. Under Indiana law, the directors of not-for-profits must act in good faith, and in the best interests of the corporation. I.C. § 23-17-13-1. While the Board did owe a duty to the Academy, AQS is a separate entity from the Academy.

In *Geiger & Peters, Inc. v. Berghoff*, 854 N.E.2d 842, 850 (Ind. Ct. App. 2006) an insolvent corporation failed to pay a creditor. The creditor sued for breach of fiduciary duty. The Indiana Court of Appeals found that "[t]he duty of the directors [and officers] is to the corporation and its stockholders, not to the creditors." *Id.* (quoting *Nappanee Canning Co. v. Reid, Murdock & Co.*, 64 N.E. 870, 872 (1902)). While this situation is a little different - the corporation at issue is a not-for-profit - the same holds true: the Board's duty runs to the Academy, not AQS.

The complaint suggests that the fiduciary duty arises from the fact that the Board performs a governmental function and utilizes tax dollars. AQS provides no support for this theory in response to the instant motion. Instead, AQS again relies on IUTSA. AQS, however, cites to no provision of IUTSA that

establishes a fiduciary relationship between AQS and the Board. Accordingly, Count V fails and must also be dismissed.

CONCLUSION

For the aforementioned reasons, the instant motions to dismiss (DE ## 8, 9, 12) are **GRANTED**. The Defendants have asked that AQS's complaint be dismissed with prejudice. While this Court has some hesitation, the dismissal will be **WITHOUT PREJUDICE**.

DATED: September 22, 2017 /s/ RUDY LOZANO, Judge
United States District Court